**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

| | | |
|---|---|---|
| CRISTOBAL MILLAN, and other similarly situated individuals, | : : : | |
| Plaintiff, | : : | Civil Action File No.: **22-CV-62224-CMA** |
| v. | : : | Judge Cecilia M. Altonaga |
| R&L CARRIERS SHARED SERVICES, LLC, and ALEJANDRO G. PARDIEZ, | : : : : | |
| Defendants. | : | |

**JOINT MOTION TO APPROVE SETTLEMENT OF FLSA CLAIM AND JOINT STIPULATION FOR DISMISSAL WITH PREJUDICE**

Plaintiff Cristobal Millan and Defendant R&L Carriers Shared Services, LLC ("R&L") (together with Plaintiff, the "Parties"), through their respective counsel, hereby stipulate to the voluntary dismissal with prejudice of this action in its entirety pursuant to Fed. R. Civ. P. 41(a)(1), subject to the Court's review and approval of the executed settlement agreement (the "Agreement") resolving Plaintiff's claim under the Fair Labor Standards Act ("FLSA"). The Parties jointly move the Court for entry of an Order approving the Parties' Agreement and for dismissal of this action with prejudice. A copy of the executed Agreement is attached hereto as **Exhibit A**.

I. **Background**

Plaintiff commenced this action on November 28, 2022, against both R&L and former defendant Alejandro G. Pardiez ("Pardiez") (Compl., ECF No. 1). Plaintiff voluntarily dismissed his claims against Pardiez on January 26, 2023 (ECF No. 26). As to R&L, Plaintiff asserted claims for: (1) alleged unpaid overtime compensation pursuant to the FLSA, both individually and on behalf of others similarly situated; (2) retaliatory discharge under the FLSA; (3) vicarious liability

for Pardiez's alleged battery; and (4) R&L's negligent retention of Pardiez. (ECF No. 1, at ¶¶ 35-89, 125-168).[1]

With respect to Plaintiff's FLSA claim, Plaintiff alleged that he performed work for R&L in excess of 40 hours per workweek for which he was not properly compensated. Specifically, while employed by R&L as a mechanic, Plaintiff was paid straight time for all hours worked and was not paid an overtime premium when he worked over 40 hours in a workweek. R&L denies Plaintiff's allegations and asserts that Plaintiff was properly compensated for all hours worked. Specifically, R&L contends that Plaintiff was exempt from the FLSA's overtime requirements through the Motor Carrier Act ("MCA") Exemption codified in 29 U.S.C. § 207(b)(13), because he worked for a covered motor carrier as a mechanic whose work directly affected the safety of operation of covered motor vehicles on public highways in transportation in interstate commerce within the meaning of the MCA. Plaintiff denies the MCA Exemption's applicability and alleges that he did not perform safety-related maintenance on covered vehicles and otherwise performed work on vehicles weighing less than 10,000 pounds, and thus Plaintiff's work was not covered by the MCA Exemption. R&L denies Plaintiff's allegations. (*See, generally,* ECF Nos. 1, 9, & 22).

From the onset of this litigation, the Parties laid out their respective positions on the facts and law. On February 15, 2023, R&L moved to dismiss all claims asserted against it except for Plaintiff's individual FLSA claim. The Parties subsequently participated in mediation on February 21, 2023, where they were able to negotiate and agree on a settlement of this action under the terms set out in the Agreement and a separate settlement agreement addressing Plaintiff's non-FLSA claims.

---

[1] In addition to claiming unpaid overtime wages, Plaintiff asserted several claims in connection with a fight he had with a coworker, Pardiez, and his termination of employment. Those claims were also settled separate and apart from Plaintiff's FLSA claim and are the subject of a separate settlement agreement and release.

II. **Legal Argument.**

    **A. Legal Principles Governing FLSA Settlements.**

Under well-established law, there are two ways in which claims under the FLSA can be settled and released by employees. First, Section 216(c) of the FLSA allows employees to settle and waive their claims under the FLSA if the payment of unpaid wages by the employer to the employees is supervised by the Secretary of Labor. *See* 29 U.S.C. § 216(c); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). Second, in the context of a private lawsuit brought by an employee against an employer under Section 216(b) of the FLSA, an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement, and the court enters a judgment approving the fairness of the settlement. *Id*. *See also Schulte, Inc. v. Gandi*, 328 U.S. 108 (1946); *Jarrad v. Southeastern Shipbuilding Corp.*, 163 F.2d 960, 961 (5th Cir. 1947). In detailing the circumstances justifying court approval of an FLSA settlement in the litigation context, the Eleventh Circuit has explained:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial contact. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a compromise is reached over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores*, 679 F.2d at 1354.

### B. The Parties' Agreement Represents a Fair and Reasonable Settlement of a Bona Fide FLSA Dispute.

The settlement of the instant action involves just such a situation in which the Court may approve the Parties' settlement to resolve and release Plaintiff's FLSA claim.[2] The proposed settlement arises out of an action filed by Plaintiff, which is adversarial in nature. *See Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247 (5th Cir. 2012) (finding *Lynn's Food Stores* fairness concerns not implicated regarding settlement that occurred within the context of a lawsuit where a plaintiff employee is represented by counsel), *followed by Smith v. Tri-City Transmission Serv.*, 2012 U.S. Dist. LEXIS 119428 (D. Ariz. Aug. 23, 2012). During the litigation and settlement of this action, Plaintiff was and is represented by competent counsel with significant experience in FLSA litigation.

The Parties' settlement of Plaintiff's FLSA claim is the result of a *bona fide* compromise between the Parties on a variety of disputes of law and fact, including without limitation: (a) whether Plaintiff performed exempt work more than a *de minimis* amount of time; (b) whether Plaintiff's alleged work on R&L's small vehicles rendered him excluded from the MCA Exemption in any workweek in which such work was performed; (c) whether Plaintiff worked any compensable time without required compensation; (d) whether R&L's actions were willful; and (e) whether R&L acted in good faith.

This Court typically considers the following factors in determining the reasonableness of an FLSA settlement:

1) The existence of fraud or collusion behind the settlement;
2) The complexity, expense, and likely duration of the litigation;
3) The stage of the proceedings and the amount of discovery completed;
4) The probability of the plaintiff's success on the merits;

---

[2] Because Plaintiff has not moved for conditional certification, no putative collective has been conditionally certified, and no other plaintiffs have opted in to this action, the Parties negotiated the settlement of Plaintiff's FLSA claim solely based on Plaintiff's own claimed damages and recovery.

4

  5) The range of possible recovery; and
  6) The opinions of counsel.

*Zaki v. Cogent Communications Holdings Inc.*, No. 1:22-cv-20268-CMA, 2022 U.S. Dist. LEXIS 151215, **1-2 (S.D. Fla. Aug. 23, 2022) (Altonaga, C.J.) (quoting *Mason v. Wyndham Vacation Ownership, Inc.*, No. 6:10-cv-1805, 2012 U.S. Dist. LEXIS 21759, **3-4 (M.D. Fla. Feb. 17, 2012)).

  As to the *first factor*, there is no fraud or collusion behind the settlement. Each Party was represented by counsel experienced in FLSA matters and who regularly litigate labor and employment matters. The Parties have decided to resolve these claims only due to the disputed issues of facts and inherent risks and substantial costs of litigation. *Infra*.

  As to the *second factor*, this action would have required the exchange and analysis of voluminous pay records and maintenance records for the entire relevant three-year period associated with Plaintiff's FLSA claim, in addition to at least three depositions, including Plaintiff, Plaintiff's supervisor, and a corporate representative of R&L to testify regarding payroll and employee classification matters. Additional depositions may have been required had Plaintiff moved for and obtained conditional certification over a putative collective. Regardless, the Parties would have had to expend significant time and resources in preparation for such discovery, summary judgment, and perhaps trial. The expense of litigation to R&L is far greater than the amount of the settlement. Likewise, Plaintiff's risk of losing at summary judgment or trial and the duration of the litigation weigh in favor of settlement.

  As to the *third factor*, the litigation is currently in the pleadings phase, as R&L recently moved to dismiss all of Plaintiff's claims except for his individual FLSA claim.[3] The Court's

---

[3] R&L's decision not to seek a pleadings-based dismissal of Plaintiff's individual FLSA claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is not an admission that the claim has merit.

practices and procedures also required the Parties to engage in early settlement discussions regarding the FLSA claim to avoid the high cost and expense associated with litigating such claims. To that end, the Parties commenced with lengthy, arms' length settlement discussions at private mediation. Had that mediation failed, the Parties would have sought full written discovery and depositions, including the exchange of substantial amounts of information relating to Plaintiff's employment and the depositions of Plaintiff, his supervisor, and a corporate representative at a minimum (depending on the ultimate result of Plaintiff's collective FLSA claim). To avoid the time and expense of such protracted and costly litigation, the Parties discussed the disputed claim and legal issues informally and reached a settlement that both sides agree is a fair and reasonable compromise.

As to the *fourth factor*, the Parties dispute: (a) whether Plaintiff performed exempt work more than a *de minimis* amount of time; (b) whether Plaintiff's alleged work on R&L's small vehicles rendered him excluded from the MCA Exemption in any workweek in which such work was performed; (c) whether Plaintiff worked any compensable time without required compensation; (d) whether R&L's actions were willful; and (e) whether R&L acted in good faith.

As an initial matter, the Parties disagree whether R&L violated the FLSA at all. It is possible that plaintiff could litigate the case through to judgment and realize no recovery whatsoever. It is also possible that the Court could find that Plaintiff was covered by the MCA Exemption except for those weeks in which he performed work on a vehicle covered by the MCA Exemption's "Small Vehicle Exception," thereby allowing him to recover overtime only in those few and far between weeks in which he actually performed work on a small vehicle (and only to the extent that such work in those weeks was not *de minimis*).

To the extent that Plaintiff could prove that R&L violated the FLSA, Plaintiff contends the alleged FLSA violations lacked good faith and liquidated damages should be imposed. R&L alleges that it acted in good faith that its actions or omissions were based on reasonable grounds for believing that it was not violating the FLSA. Assuming, *arguendo*, R&L's positions are correct, Plaintiff would be precluded from recovering liquidated damages from R&L. Thus, Plaintiff's recovery, if any, could be limited to the unliquidated wage portion, which, in turn, would severely limit Plaintiff's available damages.

As to the *fifth factor*, should R&L have prevailed based on any of its defenses, Plaintiff potentially may have recovered far less than what is claimed in the Complaint, not recovered anything or may have owed a cost judgment to R&L. Should Plaintiff prevail, R&L would potentially be indebted to Plaintiff for a judgment for wages, for part or the entirety of Plaintiff's claim, an award for liquidated damages, and attorney's fees and costs through judgment. Consequently, the Parties recognize the inherent uncertainty in proceeding with this action, the preoccupation of litigation, the investment of additional time to continue litigating this case, and the additional expenditure of fees and costs that will accrue as this matter progresses. In recognition of these concerns, the Parties have agreed to resolve this action.

As to the *sixth factor*, counsel for both Parties believe the settlement is a fair and reasonable resolution of the FLSA claims. Plaintiff's counsel and R&L's counsel are experienced attorneys with a significant background in FLSA litigation, including large scale, nationwide collective actions.

### C. The Stipulated and Negotiated Payment of Plaintiff's Attorney's Fees.

Plaintiff's attorney's fees and costs were negotiated separately from the amounts claimed by Plaintiff for his underlying FLSA claim. Indeed, Plaintiff's counsel agreed not to take any fees

in connection with his prosecution of Plaintiff's FLSA claim (thereby permitting Plaintiff recovery of all amounts paid in exchange for his release of that claim), and instead negotiated for payment of his fees as part of the Parties' resolution of Plaintiff's remaining claims. As such, the recovery by Plaintiff on his FLSA claim was not adversely affected by the amount of the attorney's fees and costs paid to his counsel.

As the court explained in *Bonetti v. Embarq Management Co.*, No. 6:07-cv-1335, 2009 U.S. Dist. LEXIS 68075 (M.D. Fla. Aug. 4, 2009), where a "plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." *Bonetti*, 2009 U.S. Dist. LEXIS 68075 at **15-16. *See also Texas v. New World Van Lines of Fla.*, No. 6:20-cv-445, 2021 U.S. Dist. LEXIS 110172, *7-8 (M.D. Fla. June 10, 2021) (accepting the representations of the attorneys that the fees were separately negotiated, and thereby accepting and approving the fees to be paid without further scrutiny); *Vasquez v. Rejuvimed Wellness Ctr. PLLC*, 2023 U.S. Dist. LEXIS 22275, *1 (S.D. Fla. Feb. 9, 2023) (Altonaga, C.J.) (granting joint motion to approve FLSA settlement where attorney's fees were "agreed upon separately and without regard to the amount paid to Plaintiff."); *Popova v. Invs. 41 LLC*, No. 22-cv-23260, 2023 U.S. Dist. LEXIS 10282, **8-9 (S.D. Fla. Jan. 20, 2023) ("Based on the parties' representation that Plaintiffs' attorney's fees were agreed upon separately and without regard to the amount paid to Plaintiffs, and finding the Settlement Agreements are otherwise reasonable, the Court finds there is no reason to believe that Plaintiffs' recovery was adversely affected by the amount of fees paid

to their attorneys. Therefore, the Court may approve the Settlement Agreements without separately considering the reasonableness of the fees to be paid to Plaintiffs' counsel.")

The settlement negotiated and reached by the Parties reflects a reasonable compromise of the disputed issues. Plaintiff and his counsel discussed the viability of Plaintiff's claims and formulated their own proposed settlement figures. The Parties then continued to engage in settlement discussions based upon their independent calculations. While Plaintiff's counsel represents that he incurred fees and costs in connection with Plaintiff's FLSA claim (including, but not limited to, preparing the claim-related allegations in the Complaint, preparing Plaintiff's Statement of FLSA Claim (ECF No. 9), and reviewing documents and information from R&L with respect to that claim), Plaintiff's counsel agreed to forego recovering any fees specific to the FLSA claim in order to bring the matter to an end and avoid the risks inherent in continuing this action, and instead the Parties negotiated Plaintiff's counsel's fees as part of the resolution of Plaintiff's remaining claims against R&L.

The Parties, through their attorneys, voluntarily agreed to the terms of their settlement during negotiations at mediation. All Parties were counseled and represented by their respective attorneys through the litigation and settlement process. The Agreement has been signed by the Parties.

**III.    Conclusion**

For the foregoing reasons, the Parties jointly request that this Court approve the Parties' settlement agreement as to the FLSA claim and request that the Court dismiss this entire action with prejudice.

Respectfully submitted this 9th day of March 2023.

| | |
|---|---|
| /s/ Zandro E. Palma (with auth.) <br> Zandro E. Palma, Esq. <br> Florida Bar No. 0024031 <br> zep@thepalmalawgroup.com <br> **ZANDRO E. PALMA, P.A.** <br> 9100 S. Dadeland Boulevard, Suite 1500 <br> Miami, Florida 33156 <br> Telephone: (305) 446-1500 <br> Facsimile: (305) 446-1502 <br><br> *Counsel for Plaintiff* | s/ *Matthew R. Olmsted* <br> Matthew R. Olmsted, Esq. <br> [FBN: 36306] <br> molmsted@chartwelllaw.com <br> **CHARTWELL LAW** <br> 1191 E. Newport Center Drive <br> Penthouse Suite H <br> Tel: (754) 227-7995 <br> Fax: (754) 212-4170 <br><br> Anthony C. White (*Pro Hac Vice*) <br> **THOMPSON HINE LLP** <br> 41 South High Street, Suite 1700 <br> Columbus, OH  43215 <br> Telephone: (614) 469-3200 <br> Facsimile:  (614) 469-3361 <br> Tony.White@ThompsonHine.com <br><br> J. Timothy McDonald (*Pro Hac Vice*) <br> **THOMPSON HINE LLP** <br> Two Alliance Center <br> 3560 Lenox Road, Suite 1600 <br> Atlanta, GA  30326 <br> Telephone: (404) 541-2900 <br> Facsimile:  (404) 541-2905 <br> Tim.McDonald@ThompsonHine.com <br><br> *Counsel for Defendant* |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 9, 2023, I electronically filed this Joint Motion to Approve Settlement of FLSA Claim and Joint Stipulation for Dismissal with Prejudice with the Clerk of the Court using CM/ECF and that a copy of the foregoing document also was served via transmission of Notice of Electronic Filing upon the parties listed on the following page.

By: **/s/ *Matthew R. Olmsted***
Matthew R. Olmsted, Esq.
[FBN: 36306]

**SERVICE LIST**
**Case No: 22-62224-CIV-ALTONAGA/Strauss**

Zandro E. Palma, Esq.
Florida Bar No. 0024031
zep@thepalmalawgroup.com
**ZANDRO E. PALMA, P.A.**
9100 S. Dadeland Boulevard
Suite 1500
Miami, Florida 33156
Telephone: (305) 446-1500
Facsimile: (305) 446-1502
*Counsel for Plaintiff*

Matthew R. Olmsted, Esq.
[FBN: 36306]
molmsted@chartwelllaw.com
CHARTWELL LAW
1191 E. Newport Center Drive
Penthouse Suite H
Tel: (754) 227-7995
Fax: (754) 212-4170

Anthony C. White (*Pro Hac Vice*)
**THOMPSON HINE LLP**
41 South High Street, Suite 1700
Columbus, OH  43215
Telephone: (614) 469-3200
Facsimile:  (614) 469-3361
Tony.White@ThompsonHine.com

J. Timothy McDonald (*Pro Hac Vice*)
**THOMPSON HINE LLP**
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, GA  30326
Telephone: (404) 541-2900
Facsimile:  (404) 541-2905
Tim.McDonald@ThompsonHine.com

*Counsel for Defendant*

# Exhibit "A"

## SETTLEMENT AGREEMENT AND RELEASE OF FLSA CLAIMS

This Settlement Agreement and Release of FLSA Claims ("FLSA Agreement") is made and entered into by and between R&L Carriers Shared Services, LLC (the "Company") and Cristobal Millan ("Employee") (together with the Company, the "Parties").

WHEREAS, on or about November 28, 2022, Employee filed a lawsuit in the U.S. District Court for the Southern District of Florida (the "Court") styled *Cristobal Millan v. R&L Carriers Shared Services, LLC, et al.*, bearing Case Number 0:22-cv-62224-CMA and alleging failure to pay overtime under the Fair Labor Standards Act (the "FLSA"), retaliatory discharge, and personal injuries allegedly sustained in the workplace and in the course and scope of Employee's employment (the "Lawsuit");

WHEREAS, the Company has denied any and all allegations of wrongdoing asserted by Employee, including the allegations in the Lawsuit and all allegations that it violated the FLSA;

WHEREAS, the Company and Employee desire to fully and finally resolve all claims, causes of action, and differences between them, and between Employee and the Company, and including but not limited to those claims set forth in the Lawsuit, and otherwise related to or arising out of Employee's employment with the Company and separation from employment;

WHEREAS, Employee is represented by counsel and has reviewed this Settlement Agreement with his counsel;

WHEREAS, the Parties participated in Court-ordered mediation on February 21, 2023, and agreed to fully and finally settle their pending Litigation, including, Employee's FLSA claim; and

WHEREAS, settlement of Employee's FLSA claim requires Court approval;

WHEREAS, the Parties are submitting this FLSA Agreement to the Court for approval and agree to take any other steps necessary to effectuate the waiver and release of Employee's FLSA claim and secure Court approval of the same; and

WHEREAS, Employee acknowledges that the consideration provided to him under this Settlement Agreement is sufficient to support the releases by Employee.

NOW, THEREFORE, in consideration of the mutual agreements set forth herein, the Parties, INTENDING TO BE BOUND, HEREBY CONTRACT, COVENANT AND AGREE as follows:

1. <u>Non-Admission</u>. The Parties agree that by entering into this Settlement Agreement neither the Company nor Employee admits any wrongdoing, liability, or noncompliance with any federal, state, city, or local rule, ordinance, statute, common law, or other legal obligation. The Company specifically disclaims and denies any wrongdoing or liability to Employee. This Settlement Agreement is entered into mutually in order to avoid the costs, uncertainty, and vexation of further proceedings and litigation. The terms set out in this Settlement Agreement are a compromise settlement of disputed claims, the validity, existence or occurrence of which is expressly denied by the Company. This Settlement Agreement shall not be admissible

Doc ID: b0e65be148c4fa038347d621614647cadcf15c00

evidence in any judicial, administrative, or other legal proceedings for any reason except to enforce the terms of this Settlement Agreement.

2. <u>Wages</u>. Except as provided in Paragraph 4, Employee acknowledges that Employee has been fully compensated for all work performed on behalf of the Company, through the Separation Date, and that Employee is not entitled to receive any additional payments as wages, bonus, commission or reimbursement except what Employee receives under this FLSA Settlement Agreement.

3. <u>The Disputed Claim of Alleged Overtime</u>. The Parties agree that the following summary accurately describes the disputed nature of Employee's FLSA claim and the Parties' respective positions:

> While employed by R&L as a mechanic, Millan was paid straight time for all hours worked and was not paid an overtime premium when he worked over (40) hours in a workweek. Whether Millan was properly treated as exempt under the FLSA, and whether he worked overtime hours for which he was not compensated in accordance with the FLSA's requirements, were both matters of dispute in the Litigation. R&L contends that Millan was exempt from the FLSA's overtime requirements throught the Motor Carrier Act ("MCA") Exemption codified in 29 U.S.C. § 207(b)(13) because he served as a mechanic whose work directly affected the safety of operation of covered motor vehicles on the public highways in transportation in interstate commerce within the meaning of the MCA. Millan denies the MCA Exemption's applicability and contends that he did not perform safety-related maintenance on vehicles covered by the MCA and otherwise performed work on vehicles weighing less than ten thousand (10,000) pounds, and thus such work was not covered by the MCA Exemption. R&L denies Millan's contentions.

4. <u>Consideration to Employee</u>. After Employee provides the Company with an executed original of this FLSA Agreement, or an executed copy of this FLSA Agreement transmitted by e-mail, the Company agrees to pay Employee the gross sum of Two Thousand Five Hundred Dollars **($2,500.00)** (the "FLSA Settlement Amount"), allocated as set forth herein and as requested by Employee, in full and final settlement of Employee's FLSA claim: (1) One Thousand Two Hundred Fifty Dollars ($1,250.00) in backpay subject to federal and state withholding requirements (W-2 income); and (2) One Thousand Two Hundred Fifty Dollars ($1,250.00) as liquidated damages not subject to federal and state withholding requirements (1099 income).

The FLSA Settlement Amount was agreed to following several rounds of negotiation between the Parties' counsel at the Court-ordered mediation, which occurred prior to the Parties engaging in significant discovery or motion practice. The matter was nevertheless vigorously litigated by the Parties. The factors the Parties evaluated in reaching their agreement include, but are not necessarily limited to: (1) the nature of Employee's job responsibilities at the Company, (2) the Company's records of Employee's maintenance work, (3) the limited amount of time Employee spent performing maintenance-related services on vehicles weighing less than 10,000

pounds, and (4) The Company's pending motion to dismiss Employee's collective action claim under the FLSA (and other claims). The Parties agree that the FLSA Settlement Amount includes liquidated damages and is a fair and reasonable resolution of a bona fide dispute over the FLSA provisions and regulations applicable to Employee FLSA claims.

The checks described in this Paragraph 4 shall be delivered to the attention of Zandro E. Palma, counsel for Employee, at 9100 S. Dadeland Boulevard, Suite 1500, Miami, Florida 33156, within fourteen (14) days of the date on which Employee executes this Agreement (the "Effective Date"); provided, however, that Employee's counsel agrees to place the FLSA Settlement Amount into Employee's counsel's trust account until the Court grants the Parties' Joint Motion for Approval of FLSA Settlement, and further provided that, should the Court deny the Parties' Joint Motion for Approval of FLSA Settlement, the Parties agree that such decision **renders this FLSA Settlement Agreement null and void and Employee's counsel agrees to return the FLSA Settlement Amount to the Company within seven (7) days of such decision. Employee and Employee's counsel agree that the FLSA Settlement Amount shall not be distributed to Employee and/or Employee's counsel until after the Court grants the Parties' Joint Motion for Approval of FLSA Settlement and approves this FLSA Settlement Agreement.**

5. <u>Dismissal of the Lawsuit.</u> In return for the promises made to Employee in Paragraph 4 above, Employee will participate in the filing of a Joint Motion for Dismissal with Prejudice in the Lawsuit within seven (7) days of the Court's approval of this FLSA Settlement Agreement and the Parties' Joint Motion for Approval of FLSA Settlement.

6. <u>General Terms</u>. The Parties to this Settlement Agreement represent and affirm that the only consideration for their agreement and execution are the terms contained herein; that no other promise or agreement of any kind has been made to or with any of them by any persons or entity to cause any party to execute this Settlement Agreement, and that no other compensation, benefits, or perquisites other than those specified in the Settlement Agreement shall be involved or claimed; that this Settlement Agreement shall not be interpreted to render Employee a prevailing party for any purpose, including but not limited to an award of attorneys' fees under any applicable statute or otherwise; and that each fully understands the meaning and intent of the Settlement Agreement, including but not limited to its final and binding effect. Each party further acknowledges that they have been encouraged to and have had the opportunity to be advised and represented by counsel concerning and before executing this Settlement Agreement, that they have carefully read and fully understand all of the provisions of the Settlement Agreement, and that the execution of the Settlement Agreement is the knowing and voluntary act of each of the Parties.

Should any provision of the Settlement Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby, and the illegal or invalid part, term or provision shall be deemed not to be a part of the Settlement Agreement. This Settlement Agreement shall survive the cessation or termination of any arrangements contained herein.

7. <u>Knowing and Voluntary Release</u>. Employee agrees that Employee is signing this Settlement Agreement voluntarily and of Employee's own free will and not because of any threats or duress. Employee affirms that no promises or agreements of any kind (other than those in this Settlement Agreement) have been made to or with Employee by any person or entity that would cause Employee to sign this Settlement Agreement. Employee has had an opportunity to discuss fully and review the terms of this Settlement Agreement with an attorney of Employee's choice,

Doc ID: b0e65be148c4fa038347d621614647cadcf15c00

and in fact has been represented by an attorney in connection with the Lawsuit. Employee agrees that Employee has carefully read this Settlement Agreement and understand its contents, freely and voluntarily assents to all terms and conditions contained in this Settlement Agreement, signs Employee's name of Employee's own free will, and intends to be legally bound by this Settlement Agreement.

   8. <u>Governing Law and Interpretation</u>. This Settlement Agreement will be governed by, and will be construed in accordance with, the laws of the State of Florida, notwithstanding any conflict of law provision to the contrary.

   9. <u>Headings</u>. The Paragraph headings contained in this Settlement Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Settlement Agreement.

   10. <u>Counterparts</u>. This Settlement Agreement may be executed, via facsimile, in counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument.

   11. <u>Entire Agreement</u>. This Settlement Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any and all prior discussions, agreements or understandings between the Parties.

*** *Signature Page Follows* ***

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the dates set forth below.

Date signed: March 7, 2023

R&L Carriers Shared Services, LLC
By: _____
Title: V.P. + Associate General Counsel

Date signed: 03 / 07 / 2023

Cristobal Millan
_____

APPROVED as to form by:

*Zandro E Palma*
Zandro E. Palma
Attorney for Mr. Millan